FILED
United States Court of Appeals
Tenth Circuit

**May 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Respondent - Appellee,

v.

DERRICK IVAN JIM,

    Petitioner - Appellant.

No. 24-2098
(D.C. Nos. 1:21-CV-00507-JB-DLM &
1:10-CR-02653-JB-GBW-1)
(D. N.M.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY*
_____

Before **PHILLIPS**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Petitioner Derrick Ivan Jim, a federal prisoner proceeding pro se, seeks a

certificate of appealability ("COA") to appeal the denial of his 28 U.S.C. § 2255 motion

and to proceed on appeal in forma pauperis.  See 28 U.S.C. § 2253(c)(1)(B).  He argues

that the district court erred in ruling on his motion without holding an evidentiary hearing

on his ineffective assistance of counsel claim.  We exercise jurisdiction pursuant to

28 U.S.C. §§ 1291 and 2253, deny Petitioner's request for a COA, and deny his motion to

proceed in forma pauperis.

---

    * This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

After a grand jury indicted Defendant on two counts of aggravated sexual assault in violation of 18 U.S.C. §§ 1153, 2241(a)(1) and 2246(2)(A), Petitioner signed a plea agreement with the United States in February 2011. The plea agreement stated that by signing, Petitioner admits certain facts related to the charges against him. The plea agreement further stated,

> I, Derrick Ivan Jim, am an enrolled member of the Navajo Nation and hold myself out as an Indian. On the evening of August 12, 2010, I was taken to the house of [K.T.] to hang out and drink alcohol with [K.T.] and some of her friends. Prior to August 12th, I did not know [K.T.] or her friends. [K.T.]'s house is located in Fruitland, New Mexico within the exterior boundaries of the Navajo Nation. At one point in the early morning hours of August 13, 2010 [K.T.] went into the house and I followed her. She laid down on the couch in her living room. I then dragged her to a back bedroom of her house. I then engaged in both vaginal and anal intercourse with [K.T.] against her will and by using force. She fought me off and I left the house.

("Admission of the Facts.") The plea agreement also contained the following stipulation:

> Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, [Jim] agrees that, upon [his] signing of this plea agreement, the facts that [Jim] has admitted under this plea agreement as set forth above, as well as any facts to which [he] admits in open court at [his] plea hearing, shall be admissible against [him] under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and [Jim] expressly waives [his] rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts [he] admits in conjunction with this plea agreement.

("Rule 410 waiver.") The district court accepted Petitioner's guilty plea during the February 8, 2011 plea hearing. During the hearing, the district court asked Petitioner if he had "engage[d] in [a] sexual act with [K.T.] by using force on [K.T.]," to which Petitioner responded, "[y]es, sir."

2

About three months after he signed the plea agreement, Petitioner, acting pro se, wrote two letters to the court and moved for a new attorney. In one of those letters, Petitioner stated that his attorney rushed him into the plea agreement despite having several unanswered questions. The court held an ex parte hearing. Before the court granted his motion to appoint a new counsel, Petitioner privately retained a new attorney.

Through his new counsel, Petitioner moved to withdraw the guilty plea. After a hearing, the district court granted Petitioner's motion. Counsel for Petitioner then moved to exclude from trial certain evidence including Petitioner's Admission of Facts and his statements during the plea hearing (together, the "Admission and Plea Statements") based in part on Federal Rule of Evidence 410. The district court denied the motion.

Before trial, Petitioner stipulated that he was a Native American and that the incident occurred within the Navajo Nation, so the only remaining issue was whether Petitioner knowingly used force to cause K.T. to engage in sex. Petitioner's only defense was that his sexual encounter with the victim, K.T, was consensual. As evidence of force, the government offered K.T.'s testimony, two Sexual Assault Nurse Examiners (SANEs), an emergency room doctor, two of K.T.'s friends who were present shortly after the incident, and a criminal investigator.

K.T. testified that she first met Petitioner on the night of August 12, 2010, at a social event held underneath the carport of her home. She went inside the house after becoming nauseous, and eventually laid down on the couch in her living room and closed her eyes. Petitioner had followed her inside and when K.T. opened her eyes, Petitioner was standing over her. K.T. testified that Petitioner grabbed her by her ankles, dragged

3

her off the couch, and down the hall to her bedroom in her house where he removed her clothing from the waist down and penetrated her vaginally and anally with his penis. She described how she tried to fight off Petitioner but due to his size and strength he held her down. Petitioner eventually moved to the laundry room and left through its exterior door. Crawling to the door, K.T. yelled for her friends outside. K.T.'s friends describe how they heard a scream before she managed to unlock the door. After she opened the door, her friends saw that she was crying and unable to talk. When she could speak again, she told her friends that Petitioner raped her. Her friends drove her to the emergency room to receive medical treatment soon after.

The SANE nurses and the emergency room doctor who treated K.T. testified that she was experiencing "severe distress," that she sustained multiple lacerations to her vaginal and anal areas, and that she had bruises on her forearms, back, and knees. [Id. at 50.] The doctor recalled that K.T.'s pain was so severe that he ordered a CT scan of her abdomen to determine whether she had a ruptured rectal wall or had suffered other life-threatening injuries. Testifying as an expert, a SANE nurse concluded that K.T.'s injuries were consistent with forced penetration and sexual assault, and that she had never seen injuries like K.T's resulting from consensual sex or toilet paper.

Along with witness testimony, the government quoted Petitioner's Admission of Facts in its opening statement and one of the government's witnesses read it aloud. The government also described the Admission of Facts and Petitioner's plea hearing statements in its closing arguments. Petitioner testified that other people prepared the

4

Admission of Facts, that he had limited time to review it, that he signed it only because his attorney told him to, and that he did not admit the facts therein.

The jury returned a guilty verdict of two counts of aggravated sexual abuse. [We affirmed his convictions on appeal holding that the district court did not err in enforcing his Rule 410 waiver and allowing the government to present to the jury Petitioner's admissions made in the plea agreement and during his plea hearing. United States v. Jim, 786 F.3d 802, 804 (10th Cir. 2015).

On June 1, 2021, Petitioner timely moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 in the United States District Court for the District of New Mexico arguing that counsel was ineffective for failing to adequately challenge the admission of his Admission and Plea Statements. A magistrate judge recommended that the district court deny the motion because the record conclusively established that counsel's failure to suppress his Admission and Plea Statements did not prejudice Petitioner. Petitioner filed objections to the magistrate judge's report and recommendations. On June 31, 2024 the district court issued a memorandum opinion and order adopting the magistrate judge's report and recommendations and overruling Petitioner's objections. The same day, the district court also issued an order denying Petitioner a certificate of appealability. Petitioner, acting pro se, now seeks a COA.

Petitioner contends on appeal that the district court erred by failing to hold an evidentiary hearing on his ineffective assistance of counsel claim before denying his § 2255 motion. Petitioner argues that he "does not have a burden to prove anything at this stage," and that "he made the requisite showing to establish credible allegations of

5

deficient performance and prejudice." Petitioner argues that § 2255 entitles him to an evidentiary hearing because his claim is "neither contradicted by the record, inherently credible, or based on conclusions rather than statements of fact."

II.

Section 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 2255(b) provides that unless a federal prisoner's § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief, the [district] court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Supreme Court construed this language to mean that an evidentiary hearing is unnecessary "where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court," or "where the motion alleges circumstances 'of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.'" United States v. Fields, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting Machibroda v. United States, 368 U.S. 487, 494–95 (1962)).

When the district court does not hold an evidentiary hearing, our review proceeds in two steps: first we "ask whether the defendant's allegations, if proved, would entitle him to relief, an inquiry we conduct de novo," and if so, "we then determine whether the

denial of the evidentiary hearing constituted an abuse of discretion." Id. (quoting United States v. Herring, 935 F.3d 1102, 1107 (10th Cir. 2019)). A petitioner seeking relief under § 2255 "bears the burden of 'alleg[ing] facts which, if proved, would entitle him to relief.'" Brecheen v. Reynolds, 41 F.3d 1343, 1362 (10th Cir. 1994) (quoting Townsend v. Sain, 372 U.S. 293, 312 (1963); see also Smith v. Wainwright, 777 F.2d 609, 615 (11th Cir. 1985) ("The burden is on [petitioner] in this habeas corpus proceeding to establish the need for an evidentiary hearing.").

Defendant argues that the district court erred by denying his § 2255 motion without holding an evidentiary hearing to determine whether his counsel was ineffective for failing to suppress his Admission and Plea Statements. The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) held that determining whether counsel's assistance was so defective as to require reversal has two components. Fields, 949 F.3d at 1247. First, "the defendant must show that counsel's performance was deficient" which requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. (quoting Strickland, 466 U.S. at 687). Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. (quoting Strickland, 466 U.S. at 687). If a petitioner cannot show both "deficient performance" and "sufficient prejudice," his claim of ineffective assistance fails. See Hooks v. Workman, 606 F.3d 715, 724 (10th Cir. 2010) (citing Strickland, 466 U.S. at 700). Thus, a district court need not address both Strickland components. Id.

7

We first consider whether Petitioner demonstrated that his trial counsel's failure to adequately challenge the admission of his Admission and Plea Statements created sufficient prejudice under Strickland.  To carry his burden, Petitioner must establish "that there is a reasonable probability that, but for counsel's error, 'the result of the proceeding would have been different.'"  Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009)).  A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial.  Id. (quoting Strickland, 466 U.S. at 694).  This standard does not require that the petitioner show that "counsel's deficient conduct more likely than not altered the outcome in the case," but it does require more than "mere speculation."  Id. (quoting Strickland, 466 U.S. at 693).  A reviewing court "must consider the totality of the evidence before the judge or jury" as some errors "have a pervasive effect on the inferences to be drawn from the evidence," whereas others "will have an isolated, trivial effect."  Strickland, 466 U.S. at 695–96.  Thus, a verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Id. at 696.

Petitioner argues that Smith v. Wainwright, 777 F.2d 609 (11th Cir. 1985) illustrates the prejudice he suffered at the hands of his trial counsel.  He argues that, like in Smith, his "confession[] provided the primary evidence offered and the only evidence which the state needed to convict him," which "eliminated the need for the state to submit any other evidence."  Smith, 777 F.2d at 616–17.  The Smith court concluded that because the defendant's trial counsel "failed to move to suppress [his] confessions, the

8

state's case was not subjected to the meaningful adversarial testing which is required under our system of justice." Id. at 617.

We agree with the district court that Petitioner fails to show sufficient prejudice under Strickland. Besides Petitioner's Admission and Plea Statements, the government presented K.T.'s testimony of the assault as well as testimony from SANE nurses, an emergency room doctor, and her friends who witnessed her severe emotional distress immediately following the assault. The government also presented expert testimony that K.T.'s injuries were inconsistent with consensual sex, toilet paper, or shaving. Rather, the expert concluded that K.T.'s injuries were consistent with forced penetration and sexual assault. In sum, the government presented abundant evidence for which a reasonable jury could have found that Petitioner knowingly used force to cause K.T. to engage in a sexual act, and that the encounter between Petitioner and K.T. was not consensual. Unlike Smith, Petitioner's Admission and Plea Statements were not the "primary" evidence presented against him. And here, unlike Smith, the government's case against Petitioner endured meaningful adversarial testing. Before trial, Petitioner's counsel filed motions in limine to exclude certain evidence, including his Admission and Plea Statements. At trial, Petitioner's counsel cross-examined the government's witnesses and presented two defense witnesses.

Although we recognize that, as Petitioner contends, a confession is "powerful evidence that is 'like no other evidence,'" Harmon v. Sharp, 936 F.3d 1044, 1081 (10th Cir. 2019) (quoting Arizona v. Fulminante, 499 U.S. 279, 296 (1991)), Petitioner's Admission and Plea Statements did not prejudice him. Considering the overwhelming

evidence of guilt presented at trial by the government, we do not think Petitioner has shown a "reasonable probability that, but for counsel's error, 'the result of the proceeding would have been different'"—the type of prejudice required under Strickland. Byrd, 645 F.3d at 1168 (quoting Challoner, 583 F.3d at 749). Like the district court, we agree that Petitioner has not carried his burden to show a reasonable probability that even if his trial counsel more thoroughly challenged the admission of Petitioner's Admission and Plea Statements, the jury would have voted to acquit. Petitioner does not address the totality of evidence presented at trial, and whether he satisfies Strickland, making only conclusory statements about prejudice in his appeal brief. Because Petitioner cannot satisfy Strickland's prejudice prong, we need not address whether his trial counsel's performance fell below the standard for a reasonable attorney to conclude that his trial counsel was ineffective. Hooks, 606 F.3d at 724.

If a petitioner's motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief," the district court need not hold an evidentiary hearing to resolve his § 2255 motion. United States v. Galloway, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting § 2255(b)). Here, Petitioner fails to show that Strickland entitles him to relief even if his trial counsel more vigorously sought exclusion of his Admission and Plea Statements. Without a viable argument under Strickland, Petitioner

fails to show that the district court's denial of an evidentiary hearing constituted an abuse

of discretion.[1]  We therefore deny Petitioner's request for a COA.

Entered for the Court


Joel M. Carson III
Circuit Judge

---

[1] We also deny Petitioner's in forma pauperis request because he failed to show the existence of a reasoned, nonfrivolous argument on the facts in support of the issue he raised on appeal.  See DeBardeleben v. Quinlan, 937 F.2d 502, 505 (10th Cir. 1991).